UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMON AVENDANO-SOTO, and<br>JORGE ALFREDO SOTO,<br><br>Defendant. | Case No. 2:20-cr-00003-APG-EJY<br><br>**ORDER** |

Before the Court is Defendant Jorge Alfredo Soto's Motion to Sever Defendants (ECF No. 36).[1] The Court has reviewed Soto's Motion, the Government's Response (ECF No. 43), and Soto's Reply (ECF No. 51). The Court finds as follows.

**I.   BACKGROUND**

In July 2019, the DEA was working with a confidential source (hereinafter the "CS") on drug interdiction in Las Vegas. It is alleged that the CS was initially in touch with Avendano-Soto through a telephone number bearing a 602 area code (common for Arizona) to arrange for the purchase of approximately 20 pounds of methamphetamine for $46,000. It is undisputed that Avendano-Soto's identity was unknown at the time of the initial contact. The CS is said to have coordinated a meeting between Avendano-Soto and an undercover DEA Task Force Officer (hereinafter the "TFO") in the parking lot of the Circus Circus Hotel. The meeting occurred at approximately 12:30 a.m. on August 1, 2019, at which time a recording was made of a conversation between the TFO and Avendano-Soto. A transcript of that conversation was provided to the Court and has been examined. Toward the end of the recording, the following exchange occurred:

TFO:                I need to see the material.

Avendano-Soto:   No, uh, it's there. It's there.

TFO:                No, well, bring it.

---

[1] Defendant Jorge Soto's codefendant is Ramon Avendano-Soto. In an effort to avoid confusion, these individuals shall be referred to herein as "Soto" and "Avendano-Soto."

| | | |
|---|---|---|
| 1 | Avendano-Soto: | Well, it's there. We'll go over there, and he'll follow us. |
| 2 | TRO: | Well, bring it over here. … What … what's that? Uh, you're … you're not … are you alone? |
| 3 | Avendano-Soto: | No. |
| 4 | TFO: | Tell him that… tell him to bring the stuff over here. |
| 5 | Avendano-Soto: | To follow you? |
| 6 | TFO: | Exactly. Bring it over here. Look, the house is right near here. |
| 7 | Avendano-Soto: | Well, yeah … |

ECF No. 43-1 at 4-5. The parties seem not to dispute that Avendano-Soto then walked away from the TFO and, a few minutes later, a BMW with Arizona license plates parked next to the TFO's vehicle. ECF Nos. 36 at 2; 43 at 3. The vehicle was driven by someone other than Avendano-Soto. The TFO then had another conversation with Avendano-Soto and the driver, later identified as Soto. This conversation was also recorded. ECF No. 43-2. Avendano-Soto and the TFO did the vast majority of speaking during this conversation that focused on the TFO trying to convince Avendano-Soto to show him the drugs so the TFO could signal law enforcement, not visibly present, to make the arrest. *Id.*; ECF No. 36 at 2.

During this second conversation, Soto is identified as "UM," meaning unidentified male. ECF No. 43-2. The comments made by Soto are mostly unintelligible, but there is an exchange between the TFO and Soto about the car Soto was driving, and, at one point, Avendano-Soto stated he had "samples" with him. *Id.* Soto also is heard in a brief exchange with the TFO as follows:

| | | |
|---|---|---|
| 21 | TFO: | … There's no… there's no problem if… if… |
| 22 | UM: | It's just that [U/I] trusted, but [U/I] |
| 23 | | *** |
| 24 | TFO: | … You guys don't know me either. |
| 25 | UM: | Of course. |
| 26 | | *** |
| 27 | UM: | We're waiting [U/I] |
| 28 | | *** |

2

| | | |
|---|---|---|
| TFO: | … if you don't trust me, I understand. … Because I feel the same. You know? | |
| UM: | Yeah. | |

*Id*. at 12, 15.  No drugs are shown to the TFO in the Circus Circus parking lot.  *Id*.

After the BMW leaves the Circus Circus parking lot, a patrol officer pulled the car over.[2] Soto and Avendano-Soto were "removed from the BMW and handcuffed by patrol officers" and "DEA did a probable cause search … locat[ing]… a duffle bag in the trunk, which contained … approximately 20 pounds of methamphetamine ordered by the CS."  ECF No. 43 at 5; *see also* ECF No. 36 at 4.  A review of the body camera video shows that Avedano-Soto asked why he and Soto were stopped and if they were arrested, to which a uniformed officer replied that everything will be explained later and that they were "detained" not arrested.  ECF No. 28-1.

There is no dispute that at some point Soto asked DEA Special Agent ("SA") Gentile why he was stopped, to which SA Gentile is alleged to have pointed to the methamphetamine pulled from the trunk.  ECF Nos. 36 at 4; 43 at 5.  Soto is then alleged to have said: "oh, no man, I don't know nothing about that."  ECF No. 36 (referencing Bate Stamp ("BS") document page 28).  Soto argues that he was not Mirandized, which appears to be undisputed.  The body camera footage includes no questioning by SA Gentile of either defendant.

With respect to Avendano-Soto, the Government states that he was Mirandized and questioned by SA Gentile.  ECF No. 43 at 5.  During this questioning, Avendano-Soto is alleged to have admitted the methamphetamine was his, he intended to sell the drugs for "46," the drugs were "fronted" to him, and that he owed money to the front-man for the drugs.  *Id*.  Avendano-Soto is also quoted as stating to SA Gentile in reference to the drugs: "[N]ah, man, it's not theirs. It's mine. … [T]hey have nothing to do with nothing."  *Id*. at 6.  Soto and Avendano-Soto were released from the scene and later indicted by a Grand Jury on two counts including conspiracy to distribute a controlled substance, and possession of a controlled substance with intent to distribute.  ECF No. 1.

---

[2] The parties sometimes refer to this as a traffic stop; however, there is no indication, and apparently no debate, that there was no traffic violation.  ECF Nos. 36 at 4; 43 at 5.

## II. THE PARTIES' ARGUMENTS

In his moving papers, Soto argues he is entitled to a separate trial from Avendano-Soto because (i) Soto "was unknown to Government agents when they observed him driving the BMW and he parked … next to [the] TFO;" (ii) none of the communications between law enforcement and defendant to arrange the sale of drugs included Soto; (iii) after being pulled over, and without a *Miranda* warning, Soto "denied any involvement with the drugs" and, (iv) Avendano-Soto "made incriminating statements implicating himself." ECF No. 36 at 6-7. According to Soto, the introduction of Avendano-Soto's statements trigger the rule established by the U.S. Supreme Court in *Bruton v. United States*[3] because the jury will not "compartmentalize the evidence between defendants;" the evidence leading up to the interactions between defendants and law enforcement will be presented by the Government and will have a "spillover" effect that will prejudice Soto who was not involved in any of those interactions; and, the familial relationship between the defendants "alone may cause the jury to consider all of the evidence against both defendants without properly applying reliable judgment about the guilt or innocence of" Soto. *Id*. at 7-8.

In response, the Government argues the inability to compartmentalize evidence is not grounds for severance. ECF No. 43. Citing *United States v. Ford*, 632 F.2d 1354, 1376 (9th Cir. 1980),[4] the Government states that "evidence compartmentalization is better left to proper jury instructions." ECF No. 43 at 8. Responding to Soto's *Bruton* argument, the Government contends: (1) "a statement is not facially incriminating merely because it identifies a defendant; the statement must also have a sufficiently devastating or powerful inculpatory impact to be incriminating on its face;" (2) "*Bruton* does not require that *all* extrajudicial statements or confessions not be used in a joint trial. Rather, only those statements that clearly inculpate the defendant or are powerfully incriminating implicate the *Bruton* rule;" and (3) statements made before Soto and Soto-Avendano were arrested and before they knew the TFO was law enforcement are "not confession[s], but are statements of [c]oconspirator[s]." *Id*. at 8-9 *citing United States v. Mikhel*, 889 F.3d 1033, 1044, 1046 (9th Cir. 2018) (emphasis in original); and *United States* v. *McCown*, 711 F.2d 1441, 1448 (9th

---

[3] 391 U.S. 123 (1968).
[4] Overruled on other grounds by *United States v. De Bright*, 730 F.2d 1255 (9th Cir. 1984) (en banc).

4

1  Cir. 1983). The Government also argues that Avendano-Soto's statements exculpate Soto because Avendano-Soto claims "no one other then he knew anything, and that the methamphetamine was all his." *Id*.

On Reply, Soto argues that Avendano-Soto's confession is testimonial, a "full confession" which will be used by the Government against him; that this will be powerful evidence to "corroborate the Government's theory of the case"; Soto will not be permitted to confront Avendano-Soto; and, that this will violate Soto's Sixth Amendment right to confrontation. ECF No. 51 at 2-4. Soto also argues that the Government is going to move to suppress Soto's denial of involvement as self-serving hearsay, which the Government confirms. *Id*. at 4 *citing* ECF No. 42 at 16 n.9.[5] This leads Soto to argue that not only does the Government intend to preclude Soto from introducing his own statement, but the Government will undoubtedly argue that Avendano-Soto's statement that Soto was not involved with the drug transaction is inadmissible hearsay if raised by Soto. *Id*. at 4. Together, Soto says, the effect of admitting Avendano-Soto's admissions, while leaving out those parts of Avendano-Soto's statement exculpating Soto will be overwhelmingly prejudicial to Soto. *Id*. at 5.

**III.   DISCUSSION**

   A.   <u>The Severance Standard</u>.

Rule 8(b) of the Federal Rules of Criminal Procedure allows for two or more defendants to be indicted in the same charging document "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 14 provides "[r]elief from [p]rejudicial [j]oinder." This Rule allows the Court to "sever defendants' trials, or provide any other relief that justice requires" if consolidation of a trial "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). However, the Ninth Circuit holds that:

> Defendants jointly indicted ordinarily should be jointly tried. Serious consideration must be given to judicial economy. The burden is on the defendant to show clear,

---

[5] The Government relies on Fed. R. Evid. 801(c) and *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam), for its position. The Government does not indicate whether it will seek to preclude any portion of the statement by Avendano-Soto in which he says "nah man, it's not theirs. It's mine … they have nothing to do with nothing" and neither party addresses the facts or law regarding redacting this statement.

5

   manifest, or undue prejudice from a joint trial. … Severance should be granted "only if there is a serious risk that a joint trail would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*.

*Mikhel*, 889 F.3d at 1043 (first internal citation and quote marks omitted). "[J]oint trials conserve [public] funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438, 449 (1986) (citation omitted).

  A series of United States Supreme Court cases discuss the standard to be applied by district courts when asked to decide a motion to sever the trials of criminal defendants. These cases include, but are not limited to, *Bruton*, *supra*, 391 U.S. 123, *Richardson v. Marsh*, 481 U.S. 200 (1987), *Gray v. Maryland*, 523 U.S. 185 (1998), and *Crawford v. Washington*, 541 U.S. 36 (2004).

  "*Bruton* established that in joint criminal trials, the introduction of 'powerfully incriminating extrajudicial statements of a codefendant who stands accused side-by-side with the defendant,' but who does not testify, violates the defendant's Sixth Amendment right to confront the witnesses against him." *Lucero v. Holland*, 902 F.3d 979, 983 (2018) (*citing Bruton*, 391 U.S. at 135-36). In *Richardson*, the Supreme Court held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when … the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." 481 U.S. at 211 (citation omitted). This requires "any reference to … another person being involved in the crime" even if the defendant's statements link him to "the confession's content." *United States v. Wilder*, Case No. 2:16-cr-00062-LRH-GWF, 2017 WL 2637390, at *3 (D. Nev. June 19, 2017) *citing Richardson*, 481 U.S. at 202-205.

  In *Gray*, the Supreme Court considered and rejected the use of blanks, symbols or words, such as "delete" or "deletion," when a defendant's name appears in a written confession that is read into the record. 523 U.S. 188. "The Court reasoned that a jury will often realize that such a redacted confession refers specifically to the defendant, and an obvious deletion may call the jurors' attention specifically to the removed name and encourage speculation about the reference." *United States v.*

6

*Peterson*, 140 F.3d 819, 821 (9th Cir. 1998) *citing Gray*, 523 U.S. at 186. The *Gray* Court explained that a jury will react to a redacted confession and unredacted confession in the same way, realizing that redactions "specifically refer to the defendant." *Gray*, 523 U.S. at 193. Jurors will end up speculating about the redaction and "may overemphasize the importance of the confession's accusation." *Id*. Thus, the Court held that the confession at issue in that case substituting "blanks and the word 'delete'" for the defendant's name "falls within the class of statements to which *Bruton*'s protections apply." *Id.* at 197.

"Crawford added a new layer to the Sixth Amendment analysis—that the Amendment's Confrontation Clause right attaches only … to 'testimonial statements.'" *Lucero*, 902 F.3d at 984 *citing Crawford*, 541 U.S. at 68. The *Crawford* Court did not "provide a comprehensive definition of testimonial" statements, but did include within this classification "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; … extrajudicial statements … contained in formalized testimonial materials …; [or] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52 (internal citations and quotation marks omitted). "[I]nterrogations by law enforcement officers fall squarely within" the class of testimonial statements. *Id*. at 53.

Glossing *Crawford*, the Court in *Davis v. Washington*, 547 U.S. 813, 822 (2006), explained that statements are testimonial when they result from questioning "the primary purpose of [which] … is to establish or prove past events potentially relevant to later criminal prosecution." *See also id*. at 826 (explaining it makes no difference if the statement is reduced to writing by the alleged perpetrator "or embedded in the memory (and perhaps notes) of the interrogating officer"). In 2011, the U.S. Supreme Court stated that "to determine … the primary purpose of an interrogation … we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Byrant*, 562 U.S. 344, 359 (2011) (internal citations and quote marks omitted). Importantly, the admission of a codefendant's "statement which does not incriminate the defendant unless it is linked with other evidence introduced at trial, does not violate the defendant's

7

Sixth Amendment rights." *U.S. v. Benzer*, Case No. 2:13-cr-00018-JCM-GWF, 2014 WL 7240091, at *2 (D. Nev. Dec. 18, 2014) *citing United States v. Hoac*, 990 F.3d 1099, 1105 (9th Cir. 1993).

Soto also notes that the Ninth Circuit has adopted a four part test that may "aid the court's determination" whether to sever. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th Cir. 2008). This test evaluates: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) [whether] instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [the movants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*.

  B. <u>Statements Made To A Confidential Source Or Undercover Task Force Officer Are Not Subject To The *Bruton* Rule.</u>

In *U.S. v. Benzer*, *supra*, 2014 WL 7240091, the U.S. District Court for the District of Nevada addressed a motion for relief from alleged prejudicial joinder in which statements by non-testifying witnesses were to be introduced at trial. In that case, the government argued that the introduction of statements to undercover informants were not testimonial and, therefore, the defendant's Sixth Amendment rights to confrontation and cross examination were not violated. *Id*. at 1. After considering Rule 8(b) and the Supreme Court decisions in *Bruton, Richardson*, and *Gray*, the court stated: "The introduction of a statement made by a non-testifying co-defendant does not require severance … unless the statement facially, expressly, clearly or powerfully implicates the defendant." *Id*. at 2 (citations omitted). Recognizing the law established by the *Crawford* Court, the court further stated that "*Crawford* indicated, but did not specifically hold, that nontestimonial hearsay statements are beyond the scope of the Confrontation Clause." *Id*.

The court next discussed the U.S. Supreme Court decision in *Whorton v. Bockting*, 549 U.S. 406 (2007). *Id*. Quoting *Whorton*, the court noted that:

> [u]nder [*Ohio v.*] *Roberts*, [448 U.S. 56 (1980),] an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand,

> the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability.

*Benzer*, 2014 WL 7240091, at *3 quoting *Whorton*, 549 U.S. at 420. This conflict, however, was easily resolved. *Benzer* explained that *Crawford* clarified the law and eliminated "Confrontation clause protection against the admission of unreliable out-of-court non-testimonial statements" finding that such statements, irrespective of indicia of reliability, are admissible. *Id. citing United States v. Larson*, 495 F.3d 1094, 1099-1100 n.4 (9th Cir. 2007) (en banc) *citing Whorton*, 549 U.S. 406. The First, Tenth, and Sixth Circuit Courts of Appeal agreed with this interpretation. *Id.* (citations omitted). Thus, the court in *Benzer* found that statements made unknowingly to a government agent, such as an undercover officer or informant, are nontestimonial, are not governed by the Sixth Amendment Confrontation Clause, are admissible, and do not require severance of trials. *Id.* at **3-5 (citing cases in the First, Fifth, Sixth, Eighth, and Tenth Circuits agreeing).

In this case, there is nothing presented to the Court suggesting, let alone demonstrating, that Soto or Avendano-Soto knew or had any idea that either was speaking with a confidential source or an undercover law enforcement officer at any time when recordings of conversations were made. In fact, Soto does not raise this issue in his Motion to Sever or on Reply. ECF Nos. 36 and 51, Thus, the recordings of conversations between Avendano-Soto and the CS when arranging for the alleged drug transaction, as well as those recordings of conversations in the TFO in the Circus Circus parking lot, are nontestimonial and are not subject to the protections afforded by the Sixth Amendment Confrontation Clause. *Benzer*, 2014 WL 7240091, at **3-5; *see also Carrillo v. Montgomery*, Case No. CV 15-8967-CJC (PJW), 2017 WL 3028609, at *7 (C.D. Cal. May 10, 2017) (citations omitted). As such, the recordings, and statements made therein, if offered by the Government, are admissible and do not violate the Sixth Amendment Confrontation Clause. The potential use of this evidence does not require severing Soto's trial from that of his co-defendant. *Benzer*, 2014 WL 7240091, at *5.

      C.      Avendano-Soto's Statements To SA Gentile Were Testimonial, But This Does Not Warrant Severance.

As stated above, the U.S. Supreme Court decision in *Bruton* laid the foundation for Sixth Amendment Confrontation Clause protection against the introduction of a nontestifying codefendant's incriminating statements at a joint trial where the defendant is unable to cross-examine the codefendant. 391 U.S. at 135-36. However, as explained by the Ninth Circuit in *Mikhel*, the Supreme Court "in *Richardson*, … held that there is no Confrontation Clause violation if the codefendant's confession must be linked to other evidence to incriminate the defendant." 889 F.3d at 1044 *citing Richardson*, 481 U.S. at 208. The *Richardson* Court "rejected the 'contextual implication' doctrine that required courts to assess whether, in light of all of the evidence, a codefendant's confession was so powerfully incriminating that a new, separate trial was required for the defendant." *Id*. *citing United States v. Sherlock*, 962 F.2d 1349, 1362 (9th Cir. 1989) *citing Richardson*, 481 U.S. at 206.

The court in *Mikhel* also cited *United States v. Yarbrough*, for the proposition that "*Bruton* does not require that *all* extrajudicial statements or confessions not be used in a joint trial. Rather, only those statements that 'clearly inculpate' the defendant or are 'powerfully incriminating' implicate the 'Bruton rule.'" 889 F.3d at 1045 *citing Yarbrough*, 852 F.2d 1522, 1537 (9th Cir. 1988) (emphasis in original). In *Mikhel*, the court explained that when a codefendant's testimony does "not facially incriminate" the defendant, it does not trigger the *Bruton* rule. *Mikhel*, 889 F.3d at 1046. The court reiterated the repeated holdings by the Ninth Circuit "that a district court's careful and frequent limiting instructions to the jury … can reduce or eliminate any possibility of prejudice arising from a joint trial." *Id.* at 1048 (citation omitted).

Here, Soto's codefendant, Avendano-Soto, is alleged to have been given his *Miranda* warning and then, during questioning by SA Gentile, admitted the methamphetamine found in the trunk of the car, driven by Soto, was his, and that he intended to sell the drugs for "46." ECF No. 43 at 5. Avendano-Soto is also alleged to have told SA Gentile that the drugs were "not theirs. It's mine" and "… they have nothing to do with nothing." *Id*. at 6. These statements, given in response

to questioning by law enforcement, are testimonial and, therefore, at first blush, subject to the *Bruton* rule. *Crawford*, 541 U.S. at 51 and 68.[6]

Here, however, as was true in *Richardson* and *Mikhel*, the statements attributed to Avendano-Soto do not facially incriminate Soto. 481 U.S. at 208; 889 F.3d at 1045. Moreover, Avendano-Soto's confessional statement is contrary to the requirement necessary for severance because the confession is not "sufficiently devastating"; nor does it have a "powerful inculpatory impact … [that is] incriminatory on its face" to Soto. *Mikhel*, 889 F.3d at 1044 (citations and internal quote marks omitted). In fact, to the extent Avendano-Soto inculpates himself, he attempts to exculpate others when he states the drugs are not "theirs" and that "they have nothing to do with nothing." As confirmed in *United States v. Angwin*, 271 F.3d 786 (9th Cir. 2001) (overruled on other grounds by *United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007) (en banc)), Avendano-Soto's statements to SA Gentile may, at the very most, implicate Soto only when linked with other evidence that may be introduced at trial. This is insufficient to require application of the *Bruton* rule. *Richardson*, 481 U.S. at 208 (while "[i]n *Bruton*, the codefendant's confession expressly implicated the defendant as his accomplice … in this case, the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial … .") (internal quote marks omitted); *Angwin*, 271 F.3d at 797; *see also U.S. v. Muhammad*, 498 Fed. App'x. 251, 252 (4th Cir. 2012) (the codefendant's "statement tends to exculpate, rather than inculpate ... [the defendant and, therefore,] it actually does not create a *Bruton* problem).

The introduction of Avendano-Soto's statement in a joint trial with Soto will result in no Confrontation Clause violation. Avendano-Soto's statements, if admitted, are insufficient to require application of the *Bruton* rule. There is simply no doubt that separate trials are *not* required simply because "an incriminating statement of one" defendant "is sought to be used" in a joint trial. *Richardson*, 481 U.S. at 209. "Joint trials play a vital role in the criminal justice system … ." *Id*.

---

[6] Presumably, albeit not discussed by either the Government or Soto, Avendano-Soto will not take the stand and Soto will not have an opportunity to cross examine Avendano-Soto about these statements.

D.  The Inadmissibility Of Soto's Self-Serving Statements And Avendano-Soto's Statement By Soto Do Not Warrant Severance.

Soto argues that the preclusion of his self-serving statements as inadmissible hearsay under 801(c) of the Federal Rules of Evidence will be compounded by Avendano-Soto's "complete confession" that corroborates the Government's theory of the case. ECF No. 51 at 4. Soto states that the Government "will undoubtedly argue" that Avendano-Soto's statement that Soto was "not involved" would be inadmissible hearsay if offered by Soto. *Id.* This is true. Fed. R. Evid. 801(d)(2)(A) and 802. But, the application of the well-settled Federal Rules of Evidence in a criminal proceeding cannot be a basis for severance.

Moreover, the exclusion of Soto's self-serving statement, in accordance with the Federal Rules of Evidence, even if coupled with Soto's inability to introduce Avendano-Soto's statement, does not require severance. As explained in *U.S. v. Hackett*, 638 F.2d 1179 (9th Cir. 1980) *cert. denied* 450 U.S. 1001 (1981), a codefendant gave a tape recorded statement to prosecutors attempting to exculpate himself and, in passing, mentioned the defendant Hackett. *Id.* at 1187. When the plea negotiation was unsuccessful, Hackett attempted to sever his trial from his codefendant's trial. *Id.* This too was unsuccessful. *Id.* Hackett then moved to have his codefendant's statement admitted "on the grounds that it exculpated him." *Id.* The court plainly stated "[t]he statement was clearly inadmissible hearsay. It was not error to exclude it. Nor was it error to deny severance." *Id.*

What appears to concern Soto is inferential prejudice, which the Supreme Court addressed in *Richardson*. The *Richardson* Court allows for the redaction of Avendano-Soto's statements to SA Gentile such that there is no mention whatsoever of others involved in the criminal acts alleged. This would allow the Government to introduce Avendano-Soto's statements that the drugs were his, that he intended to sell the drugs for "46," the drugs were fronted to him, and that he owed the front-man for the drugs. This leaves Avendano-Soto's inculpatory statements in tact while removing all mention or reference to anyone else's existence whatsoever thereby fulfilling the requirements of *Richardson* and ensuring no violation of Soto's Sixth Amendment rights occur.

1          E.     The Spillover Evidence Cited By Soto Does Not Warrant Severance.

Soto argues that the spillover of evidence that will be offered against Avendano-Soto will necessarily prejudice him requiring the Court to sever his case from that of his codefendant. However, well settled law establishes that "[a] defendant seeking severance based on the spillover effect of evidence admitted against a codefendant must also demonstrate the insufficiency of limiting instructions given by the judge." *United States v. Joetzki,* 952 F.2d 1090, 1094 (9th Cir. 1991) (citation omitted). Soto offers nothing to the Court to suggest that in this case such limiting instructions to be provided by the District Judge will be insufficient to ensure a fair, albeit perhaps not a perfect trial. *Bruton*, 391 U.S. at 135 ("[a] defendant is entitled to a fair trial but not a perfect one") (internal citation omitted).

Soto nonetheless argues that the conversations between Avendano-Soto and the CS did not involve him. That is uncontested. However, a limiting instruction given by the District Judge should be more than sufficient to ensure the jury separates Avendano-Soto's conversations with the CS and TFO from any conversation involving Soto, Avendano-Soto, and the TFO that occurred once Soto drove "the BMW and … parked the vehicle next to the TFO's vehicle" in the Circus Circus parking lot. ECF No. 36 at 6. As the Ninth Circuit observes, juries "listen[] to and follow[] the trial judge's instructions." *U.S. v. Escalante,* 637 F.2d 1197, 1201 (9th Cir. 1980).[7] "Judicial economy justifies reliance on the jury to follow the instructions of the court that segregate the evidence and limit the applicability of the evidence to each defendant." *U.S. v. Matta–Ballesteros*, 71 F.3d 754, 771 (9th Cir. 1995) (quoting *United States v. Vaccaro*, 816 F.2d 443, 448 (9th Cir.), *cert. denied*, 484 U.S. 928 (1987). And, to the extent there is some greater amount of evidence against Avendano-Soto than Soto, this also does not require severance. *United States v. Van Cauwenberghe*, 827 F.2d 424, 432 (9th Cir. 1987) *citing United States v. Rasheed*, 663 F.2d 843, 854-55 (9th Cir.1981), *cert. denied*, 454 U.S. 1157 (1982) (even though more evidence was presented against a codefendant, "the district court instructed the jury to consider the guilt or innocence of each co-defendant separately, in light of the evidence against that defendant, the jury is presumed to have obeyed");

---

[7] Soto argues that the meeting that occurs following Soto driving the BMW up to the TFO's vehicle "does not include any statements or communications by" Soto. ECF No. 36 at 6. This is simply incorrect. *See* ECF No. 43-2.

*United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir.), *cert. denied*, 513 U.S. 977 (1994) (neither a quantitative disparity in the evidence nor a prejudicial spillover effect is sufficient in and of itself to warrant a severance).

Soto likewise argues that the familial relationship between Soto and Avendano-Soto "alone may cause the jury to consider all of the evidence against both defendants … ." ECF No. 36 at 8. Soto offers no law holding that a familial relationship is sufficient prejudice requiring severance, and the Court found none. Further, it is unclear if the fact that the defendants are related will be introduced by the Government. However, even assuming that this information comes before the jury, this information is not evidence against either defendant, but a background fact that may be addressed, if introduced if at all, through a limiting instruction by the District Judge. Such evidence is clearly within the competency of an ordinary jury to understand, and Soto fails to show, with any particularity, how this information implicates a specific trial right or would prevent the jury from making a reliable judgment about his guilt or innocence.

In sum, Soto's argument regarding spillover evidence is unpersuasive. Soto's arguments do not demonstrate that evidence, which may be offered against Avendano-Soto, poses a serious risk that a joint trial will compromise one of Soto's specific trial rights "or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 537.

## IV.   ORDER

Accordingly,

IT IS HEREBY ORDERED that the Motion to Sever Defendants (ECF No. 36) is DENIED.

Dated this 14th day of August, 2020

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE