UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAMON AVENDANO-SOTO, and<br>JORGE ALFREDO SOTO,<br><br>Defendant. | Case No. 2:20-cr-00003-APG-EJY<br><br>**ORDER** |

Before the Court is Defendant Ramon Avendano-Soto's ("Soto") Motion to Compel DEA Confidential Informant File (ECF No. 48) in which Jorge Alfredo Soto ("Jorge") joins (ECF No. 52). The Court has considered the Motion, the Joinder, the Government's Response (ECF No. 53), and Soto's Reply (ECF No. 59).

**I.   Background**

The basic facts underlying this matter are largely uncontested. A confidential source ("CS"), working with the DEA, contacted Soto by phone at a number with a 602 area code and negotiated a deal that resulted in Soto agreeing to drive a large amount of methamphetamine to Las Vegas, which would be paid for by a supposed "employee" of the CS who was an undercover DEA Task Force Officer ("TFO"). Soto and the TFO met and spoke about the deal for about five minutes early on the morning of August 1, 2019, almost immediately after which Soto, Jorge, and the TFO met again for about 30 minutes, with Jorge doing little talking. Both meetings occurred in the Circus Circus parking lot. During the first meeting Soto was on foot. For the second meeting, Soto was accompanied by Jorge as they arrived in a car driven by Jorge. Both meetings were recorded and the transcripts were provided to the Court by the Government. ECF No. 27-2. No drugs were shown to the TFO during either meeting; although, Soto states he had samples with him, and repeatedly references to the "materials" the TFO wants to see as being "over there." The following additional exchanges occurred:

TFO: Let me see the sh_t. …
Soto: Uh-huh. It's just that its [U/I] here.

***

TFO: … If you don't have it now, well, there's no problem. I'll go. But …
Soto: How do you feel [U/I] we give it to you here [U/I]

***

TELEPHONE CONVERSATION WITH CS ACTING AS TFO's EMPLOYER

TFO: … Hello
[Inaudible response]
TFO: What's up then?
[Inaudible response]
TFO: Oh, where? In the car?
[Inaudible response]

***

TFO: Oh, he says that you have it in … it's in … [U/I] I don't think that the guy understood you very well. He says that you have it hidden in the car, he says.
Soto: No, it's … it's [U/I]

***

Soto: I have some samples here too, well, so you can see [U/I]
TFO: But you only have the sample?
[Voices Overlap]
Soto: I have a few samples, then.

***

TFO: Where [U/I] are you guys … where are you guys staying, then?

***

TFO: Here at Circus Circus? You're here at this one, in a room here? And you have to go to where, to?
Soto: Yeah.

***

TFO: OK. So, go … go get that sh_t, and then … and then when you come over here, you'll follow me.

***

2

Summary:  TFO "reports that they don't have the dope on them, and says they are staying at Circus Circus Hotel. … [T]hey are going to get the dope right now. … [TFO] says he has not seen any dope, or anything like that."

ECF No. 27-2.

Soto and Jorge (collectively, "Defendants") contend that the Government's case depends "largely … on the interactions between" the CS and Soto. Soto has no criminal history, and, applicable to both Defendants, Soto argues that the CS "orchestrated" the operation, and that without the CS, "there would be no case" against Defendants. ECF No. 48 at 2. Defendants argue that the Government cannot rely on the CS' "credibility and reliability to argue probable cause existed to stop and search the car" Jorge was driving, and in which Soto was a passenger, while refusing to turn over "information that would allow the defense to challenge the … [CS'] credibility and reliability." *Id*. at 5. Defendants also argue that the CS was "inextricably – involved in the alleged criminal activity. The C[S] … initiated contact with … Soto and planned the transaction. The C[S]… also coordinated the transaction, negotiated its terms and set-up the meet location." *Id*. at 7. Defendants state the CS was "involved during the … meeting" between the TFO and Soto. *Id*. Defendants state because of the CS' "prior relationships with the parties involved" he not only acted as a "go-between, but ensured he had the trust of the individuals involved." *Id*.

Defendants further argue that the CS is "the individual who provided the incriminating information to the DEA by providing some audio recordings and text messages of the alleged conversations between" the CS and Soto, which occurred prior to the in-person August 1, 2019 meetings between Soto and the TFO. *Id*. at 8. Defendants contend that "[i]n order for the [G]overnment to prove probable cause for the warrantless search of the car, it must show the C[S] ... is credible and reliable." *Id*. Finally, Soto asserts an entrapment defense that he claims requires disclosure of communications between himself and the CS who is the only percipient witness to the initiating conversations and is critical to the determination of "whether the C[S] … initially suggested the criminal activity; whether … Soto evinced reluctance; and other factors" related to entrapment. *Id*. at 10.

The Government argues that the CS, who is said to be credible, reliable, and "working at the behest of the DEA," contacted the DEA to inform the agency that the CS "located drug traffickers who were willing to deliver large amounts of methamphetamine to Las Vegas." ECF No. 53 at 2. The alleged deal struck between the CS and Soto was 20 pounds of methamphetamine for $46,000. *Id.* Thereafter, on August 1, 2019, events unfolded largely as described above. *Id*. at 3.

But, after Defendants left the Circus Circus parking lot, they were stopped by Las Vegas Metropolitan Police Department ("LVMPD") officers. *Id.* at 4. This stop appears to be erroneously referred to as a "traffic" stop; although, there is no dispute that there was no traffic infraction that prompted the stop. Instead LVMPD stopped Defendants' vehicle at the request of the DEA based on probable cause to believe drugs were in Defendants' car. *Id*. In addition to arguing the Government's general vested interest in protecting confidential sources, and this CS in particular, the Government argues that the circumstances of this case do not warrant disclosure of the informant. The Government says "the CS will not be called to testify; the CS has never met or seen either defendant; the CS was not present during the attempted drug transaction; the CS never saw the recovered drugs; and the CS could only offer second hand testimony cumulative of [the] TFO… ." *Id*. at 7. The Government argues that the CS cannot identify Soto or Jorge, the car they were in, the drugs found in the car, or testify to any statements made by either defendant. *Id*. The Government admits the CS was a "conduit between the defendants and the DEA" by virtue of "telephonically introducing" the TFO to Soto, and that until Jorge drove up in the car during the second meeting between the TFO and Defendants "nobody in the investigation" knew someone other than Soto was "assisting the drug transaction." *Id*. Testimony, by the CS, if any, would be "hearsay or cumulative of what [the] TFO … could provide." *Id*. at 7-8. The Government also argues that even if information received from a confidential source is relied upon to establish probable cause for a search, the law does not require the "disclosure of that informant." *Id*. at 8.

With respect to entrapment, and setting aside the Government's complaint that Defendants' Motion to Compel was the first time Soto claimed he was entrapped, the Government contends there is no evidence in the calls between the CS and Soto that support a defense of entrapment. *Id*. at 11. Transcripts of the calls were not provided to the Court by the Government. The Government

1 correctly points out that Soto fails to offer any facts regarding how he was entrapped. The
2 Government contends that Soto simply argues that by asserting the defense of entrapment he is
3 entitled to information regarding the informant. *Id*. Finally, the Government argues that the CS "is
4 not the only witness with firsthand knowledge" regarding how Soto was induced to engage in
5 criminal activity or to have criminal activity suggested to him. *Id*. at 12. The Government states
6 that Soto could have offered facts to support entrapment, but did not. *Id*.

   On Reply, in addition to repeating much of what was argued in the Motion to Compel, Soto
8 states that the Government has only produced the transcripts of six out of more than "100 contacts"
9 between Soto and the CS. ECF No. 59 at 2-3. Soto also states that "the [G]overnment refuses to
10 disclose how the C[S] … came into contact with" Soto, why the CS "targeted" Soto, or what Soto
11 and the CS spoke about during their many contacts. *Id*. at 4. Soto argues that "the [G]overnment
12 has not disclosed any evidence of when the C[S] … first contacted … Soto[;] what the C[S] …
13 [allegedly] said to purportedly convince … Soto to participate in this alleged drug buy[; or] … how
14 often the C[S] … contacted … Soto before the date of the buy." *Id*. at 5. The Government also has
15 not provided "a complete call log of the communications between" the CS and Soto "that began on
16 July 17, 2019 … ." *Id*. Soto argues that these communications are relevant to the defense and they
17 cannot obtain the information from any witness other than the CS because, of course, Soto cannot
18 be compelled to testify. *Id*. Defendant articulates that the CS provides key support for the probable
19 cause search of the car in which drugs were found because the DEA received "credible and reliable"
20 information from the CS that the drugs were coming to Las Vegas "after the C[S]… negotiated the
21 deal with" Soto, and that "on the day of the drug transaction[,] the DEA corroborated that … Soto
22 was there for the drug deal when he spoke with the C[S] … ." *Id*. at 7.

23 **II.   Discussion**

24    In 1957, the United States Supreme Court held that the Government has a limited privilege
25 to withhold the identity of a confidential source when that individual will not testify at trial. *Roviaro*
26 *v. United States*, 353 U.S. 53, 59-61 (1957). The privilege "serves several important law
27 enforcement objectives, including encouraging citizens to supply the government with information
28 concerning crimes." *United States v. Henderson*, 241 F.3d 638, 645 (9th Cir. 2000). There are two

main factors courts consider when deciding whether to order the disclosure of information pertaining to a confidential source. *United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir. 1989). These two factors are "1) whether the testimony would be relevant and helpful to the defendants' case, especially in terms of the relationship between the asserted defenses and the likely testimony of the informant, … which in turn will often depend on the degree of involvement by the informant in the charged crime, … and 2) the government's interest in protecting the safety of an informant … ." *Id*. at 255-256 (internal citations and quote marks omitted). This Court must weigh:

> the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro*, 353 U.S. at 629. However, "no fixed rule with respect to disclosure is justifiable." *Id*. at 628.

"The burden of proof is on the defendants to show need for the disclosure" which requires more than "mere suspicion that the information will prove helpful." *Sai Keung Wong*, 886 F.2d at 256 (internal citation omitted). The Ninth Circuit, in *Sai Keung Wong*, explained that the Supreme Court in *Roviaro* reversed "the trial court's denial of disclosure … emphasiz[ing] … that the informant was the only person with material information of the key evidence admitted against the defendant." *Id*.

More recently, in *U.S. v. Rowland*, the Ninth Circuit stated, "[w]hen a court is considering whether an informant's tip is sufficient to support a finding of probable cause or reasonable suspicion, the court must employ a totality-of-the-circumstances approach that takes into consideration the informant's veracity or reliability and his basis of knowledge." 464 F.3d 899, 970 (9th Cir. 2006) (internal citations and quote marks omitted). *Rowland* then identified factors courts may use when assessing informant reliability. These include whether the informant (1) is known or anonymous, (2) has a proven track record, (3) reveals the basis of the informant's knowledge, and (4) provided detailed "predictive information about future events that is corroborated by police observations … ." *Id*. at 907-08. In *U.S. v. Gonzalo Beltran*, the Ninth Circuit identified three

6

factors courts consider when deciding whether to order disclosure of identifying information regarding a confidential source. 915 F.2d 487, 488-89 (9th Cir. 1990). These factors include "(1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure." *Id*.

Here, Soto claims that disclosure of the informant, and a host of information related to the informant and the contacts between Soto and the informant, are required because Soto intends to assert a defense of entrapment. In contrast, the Government argues that "there is no right to disclosure of an informant where the informant was only relevant in developing probable cause to search." ECF No. 53 at 6 *citing U.S. v. Williams*, 898 F.2d 1400, 1402 (9th Cir. 1990).

Before disclosure of informant information is required, a defendant must make a "minimal threshold showing that disclosure would be relevant to at least one defense," after which the Court must hold an *in camera* hearing. *U.S. v. Thomas*, Case No. CR-10-120-CAS, 2010 WL 1946912, at *1 (C.D. Cal. May 10, 2010) *citing Sai Keung Wong*, 886 F.2d at 256; *see also U.S. v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993) ("[w]hile an *in camera* hearing need not be held whenever there is a request for the identify of an informant, … we have previously approved the holding of such a hearing where the defendant makes a minimal threshold showing that disclosure would be relevant to at least one defense. … We now hold that under those circumstances a hearing is required.") (internal citations omitted). As demonstrated in *Spires*, meeting the minimal threshold includes arguing the potential discovery of specific facts that may be relevant to the case and helpful to the defense identified. *Id*. at 1238-39; *see also Thomas*, 2010 WL 1946912, at **2-3 (in which specific facts related to the defendants defense were argued and citing to numerous cases demonstrating the same).

The defense of entrapment requires two elements be met: "(1) the government inducement to commit the crime; and (2) the absence of predisposition to commit the crime." *Thomas*, 2010 WL 1946912, at *2 (internal citation omitted).

> To determine predisposition, the Court must look to five factors: (1) the character or reputation of the defendant, including any prior criminal record; (2) whether the

7

> government initially made the suggestion of criminal activity; (3) whether the defendant engaged in the criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense that was overcome by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion supplied by the government. … [T]he defendant's reluctance to engage in criminal activity is the most important.

*Id*. (internal citation omitted).  At this juncture, Soto offers only one fact to support the conclusion that he was reluctant to engage in criminal activity.  That is, Soto repeatedly states that he has no criminal history (or history of violence) and therefore the Court should conclude there is sufficient support to find he was not predisposed to commit the crime with which he is charged thereby leading to the disclosures requested.  ECF No. 48 at 2, 8; ECF No. 59 at 2-3 ("[i]ndeed, the most facially obvious defense in this case revolves around whether Avendano-Soto (a young man with no criminal history) was predisposed to commit this crime or whether, the government induced him to do so") and 12.  No other evidence of inducement or predisposition was argued or offered by Soto.  ECF Nos. 48 and 59.  While the Government seizes on the lack of specifics, the Court notes there were numerous conversations between the CS and Soto that have not been disclosed (even to the Court) and, while the Government contends these conversations contain no evidence to support a defense of entrapment, without review of transcripts or an *in camera* hearing there is no way for the Court to confirm this is accurate (albeit the Court is not suggesting the Government is being disingenuous).

Thus, consistent with what occurred in *Williams* (898 F.2d at 1402 noting that the district court held an *in camera* hearing), was ordered in *Thomas* (2010 WL 1946912, at *4 holding an initial hearing allowing the defendant to establish its minimal threshold requirement), and done in *United States v. Halgat*, Case No. 2:13-cr-00251-APG-VCF, 2016 WL 4528961, at *1 (D. Nev. Aug. 30, 2016) (in which the court conducted an *in camera* review of the informant's file, after an assertion of entrapment, despite the fact that the Government proffered it did not intend to call the informant as a witness and the informant was not involved in the drug transaction that gave rise to the charges), the Court orders, as a first step, the production of the CS' file (as described below) along with transcripts of any calls between the CS and Soto for *in camera* review.  Depending on the outcome of the Court's review, the Court may order an *in camera* hearing or grant or deny Defendants'

Motion to Compel. This review will help to ensure that Soto's constitutional rights are not violated while also allowing the Court to consider the Government's legitimate interest in protecting the safety of its informant.

### III. Order

Accordingly,

IT IS HEREBY ORDERED that within ten (10) days of the date of this Order, the United States Attorney's Office shall deliver to the undersigned's chambers a sealed envelope or envelopes or an external drive (depending on the amount of the information to be provided) containing all information relating to (1) whether and for how long the DEA has worked with this CS, (2) whether the CS has a proven track record and, if so, the basis for that representation, (3) the basis for the informant's knowledge leading to initiation of contact with Soto, and, to the extent distinct, (4) why the informant initiated contact with Soto. Transcripts of all conversations between the CS and Soto are also to be provided *in camera* to the Court. As stated, following the Court's review, the Court will issue another order.

Dated this 2nd day of October, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

9